## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Thomas Bartholomew Simpson, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | **1:22cv794 (LMB/IDD)** |
| | ) | |
| Director Harold Clarke, | ) | |
|     Respondent. | ) | |

### <u>MEMORANDUM OPINION</u>

Thomas Bartholomew Simpson ("petitioner" or "Simpson"), a Virginia inmate

proceeding <u>pro se</u>, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254,

challenging the constitutionality of his March 3, 2016 convictions in the Circuit Court of

Spotsylvania County, Virginia. The respondent has filed a Motion to Dismiss and Rule 5 Answer

with supporting briefs and exhibits. [Dkt. Nos. 20–24, 29–31], to which Simpson has filed his

opposition. [Dkt. Nos. 26–28, 33]. Accordingly, this matter is ripe for disposition. For the

reasons that follow, respondent's Motion to Dismiss will be granted, and the petition dismissed

with prejudice.

### I. Procedural History

On December 8, 2015, a jury sitting in the Circuit Court of Spotsylvania County found

Simpson guilty of armed statutory burglary in violation of Virginia Code § 18.2–91; entering the

home of a person with a protective order in violation of Virginia Code § 16.1–253.2; and the

lesser included offense[1] of assault and battery in violation of Virginia Code § 18.2-57. (CR at

189–92).[2] On February 10, 2016, the circuit court sentenced Simpson to: 20 years in prison for

---

[1] Simpson had been indicted for malicious wounding in violation of Virginia Code § 18.2–51.

[2] References to the trial record will be designated "(CR at ____)."

armed statutory burglary; a term of three months in jail for entering the home of a person with a

protective order; and a term of 12 months in jail for assault and battery. The sentences for assault

and battery and entering the home of a person with a protective order were run concurrent with

each other. The final judgment order was entered on March 3, 2016. (CR at 233-35).

      Simpson filed a petition for appeal in the Court of Appeals of Virginia, assigning error to

the court's admission of a portion of a recorded 911 call and a series of text screenshots into

evidence:

> 1. The Trial Court erred in admitting a portion of the 911 call containing a child's statement, "Daddy," in the background because:
>
>> a. The child's statement was hearsay and there were no facts introduced to establish that the statement fit within a recognized hearsay exception; and
>> b. The child's statement was substantially more prejudicial than probative and had a tendency to mislead the jury.
>
> 2. The Trial Court erred in admitting screenshot images of text messages because:
>
>> a. The screenshots lacked the proper foundation;
>> b. The screenshots were not relevant; and
>> c. The screenshots were substantially more prejudicial than probative.

The court granted the petition for appeal and after further briefing and argument the court

affirmed Simpson's convictions. <u>Simpson v. Commonwealth</u>, No. 0311–16–2, 2017 Va. App.

LEXIS 292 (Va. Ct. App. Nov. 21, 2017). The opinion summarized the evidence as follows:

> Appellant and Erica Simpson[3] . . . married and had two children, J. and Z. In March 2014, after several years of marriage, the couple separated. After appellant moved out of the family home, he began sending threatening text messages to [Erica]. [Erica] took screenshots of many of the messages and uploaded them to her computer, and on April 2, 2015, she obtained a protective order against appellant.
>
> Three weeks later, during the early hours of April 23, [Erica] and her boyfriend, Javelle Rowe, were asleep in [Erica]'s home. They were in the master bedroom with the door locked. J. and Z., who were three and four years old, respectively, were asleep in their bedrooms across the hall. Before going to bed, [Erica] had checked to see that the house was secured and the doors were locked. She had left

---

[3] The victim, Erica Simpson, will hereinafter be referred to as "Erica."

a small table light burning to provide some illumination for the hallway between the bedrooms.

At approximately 1:30 a.m., [Erica] and Rowe awoke to the sound of shattering glass. A few seconds later, they heard footsteps coming down the hall. [Erica] ran into the suite bathroom while Rowe went to the bedroom door. [Erica] heard a "banging sound" coming from the bedroom door, "[t]he sound it makes when someone hits it or kicks it." Rowe positioned himself against the door to prevent anyone from entering.

[Erica] left the bathroom and returned to the bedroom to get her phone. She yelled that she was going to call the police and began dialing 911. [Erica] could see Rowe trying to keep the door closed, but the intruder had managed to get a hand and arm inside the door. The intruder was swinging a pipe, and Rowe felt himself being struck on the wrist and head with "a hard metal type of object, . . . just coming down on me very forceful."

About that time, [Erica] heard appellant speak to Rowe. Asked at trial how certain she was that the voice she heard was appellant's, [Erica] replied that she was very certain. [Erica] also testified that she heard appellant say[,] "it's okay, [J.]," when "[J.] said [']daddy['] in the hallway." Asked whether J. said anything in return, or whether any of her children said anything, [Erica] replied that "[t]hey said [']daddy.[']" Rowe testified at trial that he heard a male voice, but did not recognize the speaker and was not sufficiently familiar with appellant to identify his voice. He heard the male "in conversation" with J. and Z., and noted that the children were "very calm. They were comfortable with whom they were [speaking]."

The intruder stopped hitting Rowe at about the time Rowe heard J. and Z. speaking with someone. A few moments later, Rowe opened the bedroom door and [Erica] was able to go out and check on her children. In the kitchen, [Erica] discovered broken windowpanes in the exterior door and fragments of glass scattered across the floor.

At approximately 2:00 a.m., appellant knocked on the door of a cousin who lived near [Erica]'s home. He told her that his mother's car was "acting up, like it was going to break down," and asked if he could sleep on her couch. She agreed to let him do so. Shortly before 2:30 a.m., First Sergeant Woodard from the Spotsylvania County Sheriff's Office arrived near the cousin's townhouse. Woodard located a car suspected to be involved in the incident at [Erica]'s home, a red Toyota Corolla, and inspected the area around it. Woodard found a shard of glass beside the vehicle. He also touched the Corolla's hood, and although other vehicles in the area were cold to the touch, the Corolla was warm. The car was towed to the sheriff's office and released a few hours later to its registered owner, appellant's mother. A detective testified at trial that in releasing the vehicle, he was able to drive it out of the sheriff's compound without difficulty.

Over appellant's objection, a portion of the recording of [Erica]'s 911 call was entered into evidence at trial. During the call, [Erica] tells the 911 operator that appellant broke into her house and she thinks he is still inside. The operator tells [Erica] to try and get her children, but [Erica] says, "[n]o, I can hear him. I'm not

going out there, I can hear him talking." A few seconds later, [Erica] tells the operator, "I can hear my kids." After a few more seconds, a voice in the background says "daddy."

Simpson, 2017 Va. App. LEXIS 292, *2-5.

The Court of Appeals observed that Simpson had raised an evidentiary error with regard to the 911 tape, and, applying "the standard for non-constitutional harmless error," found that admitting the statement was harmless error. Id. at *10. At trial, after the 911 tape was played "which included the child's statement, 'daddy,' audible in the background;" Erica "testified that she heard appellant speak to their son 'when [J.] said [']daddy['] in the hallway;'" and "that after the intruder spoke to J.," she heard her children say "daddy." Id. at *11–12. "Thus, the recorded child's statement, if erroneously admitted, was merely cumulative of [Erica]'s testimony that a child said 'daddy' during the home invasion." Id. at *12. The court also found that the trial court had not abused its discretion in finding the text messages relevant, that the probative value outweighed the prejudice, and that a proper foundation had been laid through the unrebutted and unchallenged testimony of Erica. Id. at *14–18.

Simpson raised the same assertions of error in his petition for appeal to the Supreme Court of Virginia, [Dkt. No. 23–11], which, on June 29, 2018, refused Simpson's petition for appeal, [Dkt. No. 23–1], and on October 5, 2018, denied Simpson's petition for a rehearing. [Dkt. Nos. 23–2, 23–15].

On September 30, 2019, Simpson filed a petition for a writ of habeas corpus in the Circuit Court of Spotsylvania County,[4] asserting the following claims.

a) "Counsel Was Ineffective For Failure To Move For Dismissal Of Screenshot Of The Text Messages When The Commonwealth Failed To Present Their Forensic Analysis Testimony Through Witness Detective Rickens: In Violation

---

[4] References to the habeas record will be designated "(Hab. at __)." The state habeas petition was filed on October 22, 2019 and was sent to the circuit court on September 30, 2019. (Hab. at 1, 9).

4

Of Petitioner's Sixth And Fourteenth Amendment Rights Of The United States Constitution."

b) "Counsel Was Ineffective Pursuant To Conflict Of Interest For Presenting To The Jury That Petitioner Was The Author Of The Commonwealth's Evidence Of Screenshot Text Messages: In Violation Of Petitioner's Sixth And Fourteenth Amendment Rights Of The United States Constitution."

c) "Counsel Was Ineffective For Failure To Object To Hearsay Evidence Pursuant To Son's Statement In 911 Tape: In Violation Of Petitioner's Sixth And Fourteenth Amendment Rights Of The United States Constitution."

d) "Counsel Was Ineffective For Failure To Object To The Commonwealth Using The 911 Tape of Son's Statement As Identification: In Violation Of Petitioner's Sixth And Fourteenth Amendment Rights Of The United States Constitution."

(Hab. at 5, 6–7).

Over six months later, on April 23, 2020, Simpson filed a memorandum in support of his petition, that raised additional claims of prosecutorial misconduct, which the court summarized as follows:

e) The prosecutor committed misconduct by: 1) misleading the court about the forensic analysis of the screenshots; 2) knowingly introducing false testimony; and 3) lying in closing argument.

(Hab. at 50, 703).[5]

On December 21, 2020, the circuit court denied the habeas petition. [Dkt. No. 23-3]. The court found that the claims of ineffective assistance of counsel had no merit under either prong of Strickland v. Washington, 466 U.S. 668, 687 (1984); that counsel did not have a conflict of interest; and that the claims of prosecutorial misconduct were barred as untimely under the state statute of limitations and were also defaulted under the rule of Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974). Id. at 7–12.

Simpson appealed the denial of his habeas petition to the Supreme Court of Virginia, [Dkt. No. 23–14], which summarily refused the petition for appeal in an order dated May 11,

_____

[5] The Petitioner's memorandum also repeated the claims from his original petition. (Hab. at 30, 41, 44, and 48).

2022, [Dkt. No. 23–4], and on June 30, 2022, denied Simpson's petition for a rehearing. [Dkt. Nos. 23–5, 23–15].[6]

## II. Federal Petition

Simpson, proceeding pro se, filed a timely petition for a writ of habeas corpus on July 5, 2022 pursuant to 28 U.S.C. § 2254 that alleges as follows:

1. "State Court Violated Federal Law By Failing To Remain N[e]utral Party In Allowing The Attorney General's Office To Submit Both The Motion To Dismiss And Final Order That The Circuit Court Signed And Endorsed Which Was A One–Sided Opinion Higher Courts Rely On Prejudicing Petitioner From A Full, Fair, And Impartial Habeas Corpus Proceeding: In Violation Of Petitioner' Fifth, Sixth, And Fourteenth Amendment Of The U.S.C."[7]

2. "State Court's Determination That The Son's Identification Of 'Daddy' Was Harmless Hearsay From Portion Of 911 Call Recording Was An Unreasonable Determination Of The Facts Because Statement Had Substantial And Injurious Effects Resulting In Trial Errors And An Unfair Procedure."[8]

3. "State Court's Determination That An Adequate Foundation Was Established Identifying The Petitioner As The Sender Of Screenshot Text Messages, Which Lacked Forensic Analysis Testimony Of Authenticity By Detective To Establish Relevance, Was Based Upon An Unreasonable Determination Of The Facts Violating Petitioner's Due Process And Confrontation Clause Of U.S.C. Amendments Resulting In An Unfair Trial Because Evidence Was Unauthenticated And Irrelevant."

4. "State Court Violated Federal Law Because Counsel Was Ineffective:

   (A)   . . . [he] Fail[ed] To Move For Dismissal Of Screenshot Text Messages When The Commonwealth Failed To Present Their Forensic Analysis Testimony Through Witness Detective Rickens: In Violation Of Petitioner' Fifth, Sixth, And Fourteenth Amendment Of The U.S.C.

---

[6] A certified copy of the appeal from the dismissal of the state habeas petition to the Supreme Court of Virginia was filed on November 2, 2022. References to that record will be cited as "VSCT at __."

[7] Simpson uses "U.S.C." as an abbreviation for the United States Constitution.

[8] In the memorandum petitioner filed on October 12, 2022, he also alleges that the admission of the portion of the 911 tape where his son said "daddy," violated the Confrontation Clause and denied him due process and the right to a fair trial. [Dkt. No. 19] at 24.

(B)   ... [he had a] Conflict Of Interest For Presenting To The Jury That Petitioner Was The Author Of The Commonwealth's Evidence Of Screenshot Text Message: In Violation Of Petitioner' Fifth, Sixth, And Fourteenth Amendment Of The U.S.C.

(C)   ... [he] Fail[ed] To Object To Hearsay Evidence Pursuant To Son's Statement In 911 Tape: In Violation Of Petitioner' Fifth, Sixth, And Fourteenth Amendment Of The U.S.C.

(D)   ... [he] Fail[ed] To Object To The Commonwealth Using The 911 Tape of Son's Statement As Identification: In Violation Of Petitioner' Fifth, Sixth, And Fourteenth Amendment Of The U.S.C."

5.   "State Court Violated Federal Law Because The Commonwealth Attorney Committed Prosecutorial Misconduct ...

(A)   ... By Frauding The Court About Detective Rickens Forensic Analysis Of Screen Shot Text Messages: Violation Of Petitioner's Fifth, Sixth, And Fourteenth Amendment Rights Of The U.S.C. Amendments.

(B)   ... By Allowing Witness To Give False Testimony To The Jury As To Screenshot Text Message Foundation: Violation Of Petitioner's Fifth, Sixth, And Fourteenth Amendment Rights Of The U.S.C. Amendments.

(C)   ... By Failing To Properly Authenticate Electronic Communication: Violation Of Petitioner's Fifth, Sixth, And Fourteenth Amendment Rights Of The U.S.C. Amendments.

(D)   ... By Allowing Witnesses To Commit Perjury By:

    (a) Allowing Erica Simpson to give conflicting testimony about what she heard; and

    (b) Allowing Javell Rowe to give conflicting testimony about, 'having a good relationship with everyone who's in his life,' but telling the investigator that 'she said she could not care if [intruder] killed them both.

  Violation Of Petitioner's Fifth, Sixth, And Fourteenth Amendment Rights Of The U.S.C. Amendments."

6.   "The State Court Violated Federal Law Because Commonwealth Prosecutor Committed Prosecutorial Misconduct By Telling Jury During Closing Argument That Child Made 'Daddy' Comment Because He Seen His Daddy Standing Right In Front Of Him Knowing Statement Was False And Misleading: In Violation Of Petitioner's Fifth, Sixth, And Fourteenth Amendment Rights Of The U.S.C. Amendments."

[Dkt. No. 1] at 5-14; [Dkt. No. 1-2].[9]

### III. Exhaustion and Procedural Default

Respondent first asserts that many of Simpson's claims are not properly exhausted and, therefore, are procedurally defaulted. A state prisoner must exhaust his remedies in state court before seeking habeas corpus relief in federal court. 28 U.S.C. § 2254(b). The exhaustion doctrine gives "state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The exhaustion requirement is satisfied by a finding that the "essential legal theories and factual allegations advanced in federal court [are] the same as those advanced at least once to the highest state court." Pruett v. Thompson, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), aff'd, 996 F.2d 1560 (4th Cir. 1993) (citations omitted)). This means that both the same arguments and factual support raised in the petitioner's § 2254 application must have been presented to the Supreme Court of Virginia either on direct appeal or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364, 365-66 (1995).

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)); see also Bassett v.

---

[9] The Fourth Circuit recently held that a district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard" and it is "the district court's duty to consider only the specific claims raised in a § 2254 petition." See Folkes v. Nelsen, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); Frey v. Schuetzle, 78 F.3d 359, 360-61 (8th Cir. 1996) ("[D]istrict courts must be careful to adjudicate only those claims upon which the petitioner seeks relief and take care not to decide claims upon which the habeas petitioner never intended to seek relief."). Consequently, the Court has maintained the somewhat disjointed numbering system Simpson used in his habeas petition and subsequent pleadings for ease of reference.

Thompson, 915 F.2d 932, 936-37 (4th Cir. 1990) (holding that an unexhausted claim, which would be held defaulted if the petitioner were to return to state court, is deemed simultaneously exhausted and defaulted for purposes of federal habeas review).

   *A. Claim 1*

   Respondent contends that Claim 1, which alleges a due process violation based on the circuit court using an order drafted by respondent's counsel to dismiss his state habeas petition, "was raised for the first time in" his federal habeas petition. [Dkt. No. 23] at 5. Respondent is incorrect. The petition for appeal Simpson filed after the circuit court dismissed his state habeas petition, clearly assigned error to the dismissal of his petition by "Signing Appellee's Draft 'Final Order'" which he claimed violated his "due process" rights. [Dkt. No. 23–14] at 12, 27. The respondent in the state habeas proceeding elected not to file a brief in opposition, (VSCT at 46), and the order by the Supreme Court of Virginia summarily dismissed the petition for appeal without citing any reason for the dismissal. (Id. at 138). Such a dismissal is generally considered to be a dismissal on the merits. See Sheets v. Castle, 559 S.E.2d 616, 619 (Va. 2002) ("the refusal of a petition for appeal is based upon the merits of the case . . . unless the grounds upon which the refusal is based is discernible from the four corners of the Court's order, the denial carries no precedential value").[10] Accordingly, Claim 1 has been exhausted because it was presented to the Supreme Court of Virginia and refused on the merits.

---

[10] Sheets held that "when the grounds upon which the Court relied as a basis for denial cannot be determined," in addition to a determination that no error was found, "there are several other possibilities as to why the assertion of error had no merit—such as: harmless error, right for the wrong reason, and independent reasons to affirm that have not been argued. Id. at 619.

### B. Claim 2

A portion of Claim 2 alleges that the trial court violated Simpson's Confrontation Clause rights by admitting the 911 call with Simpson's son's statement, "daddy." [Dkt. No. 19] at 24. In his federal petition, Simpson avers that he raised this claim on direct appeal. [Dkt. No. 1] at 7, however, the Court of Appeals found that Simpson's appeal "allege[d] an evidentiary error," and conducted its analysis "under the standard for non-constitutional harmless error." Simpson, 2017 Va. App. LEXIS 292, *10. The subsequent summary dismissal by the Supreme Court of Virginia is presumed to have adopted the same reasoning as the lower court. See Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (explaining that a federal court should apply the "look through" doctrine to "the unexplained decision to the last related state–court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning."); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

Simpson argues that the Confrontation Clause portion of Claim 2 was exhausted based upon the following excerpt from his petition for appeal to the Supreme Court of Virginia: "Although case law does not require a court to determine that a very young hearsay declarant is competent to testify, the child's age and the lack of confrontation all contribute to the fog of uncertainty about what the child meant when he said 'daddy.'" [Dkt. No. 23–11] at 17 (emphasis added). Simpson omits the very next sentence in his petition for appeal which states, "Because the statement is unreliable and does not qualify as a recognized exception to the hearsay rule, the Trial Court erred by admitting the statement, and the Court of Appeals erred in declining to address this error on the merits." Id. It is clear, when read in context, that Simpson presented this issue to the Virginia appellate courts as an "evidentiary error," which is why the Court of Appeals of Virginia stated it was applying "the standard for non-constitutional harmless error,"

10

Simpson, 2017 Va. App. LEXIS 292, *10, and found the error harmless because the statement "daddy" on the 911 call recording was "'merely cumulative of other undisputed evidence.'" Id. at *11 (citations omitted).

The Fourth Circuit has held that exhaustion requires that the "ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Mallory, 27 F.3d at 995 (citing Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988)). Here, Simpson did not clearly raise a Confrontation Clause claim on direct appeal and the record establishes that the appellate courts addressed a state law evidentiary issue on the admission of evidence under a hearsay exception, and not any related federal claim. See Pethtel v. Ballard, 617 F.3d 299, 306 (4th Cir. 2010) (finding that the habeas petitioner had not "fairly presented" his federal due process claims even though the petitioner had "presented the core [state statutory] claim to the [state supreme court]," because the petitioner had "not [made] the argument that his rights were deprived arbitrarily in violation of due process") (citing Ramdass v. Angelone, 187 F.3d 396, 409 (4th Cir. 1999)). Accordingly, this portion of Claim 2 is simultaneously exhausted and defaulted because it was not presented to the Supreme Court of Virginia for a decision on the merits during direct appeal and would be defaulted under the rule of Slayton v. Parrigan, 205 S.E.2d at 682 if raised in a successive state habeas petition. It would also be barred as successive under Virginia Code § 8.01–654(B)(2),[11] and time-barred under the state statute of limitations, Virginia Code § 8.01–654(A)(2).[12]

---

[11] See Mackall v. Angelone, 131 F.3d 442, 445-46 (4th Cir. 1997) (Code § 8.01-654(B)(2) is an adequate and independent bar).

[12] Virginia Code § 8.01-654(A)(2) is an adequate and independent bar that precludes federal review of a claim. See Sparrow v. Dir., Dep't of Corr., 439 F. Supp. 2d 584, 588 (E.D. Va. 2006); see, e.g., Baker v. Clarke, 95 F. Supp. 3d 913, 917-18 (E.D. Va. 2015) ("[M]any courts

*C. Claims 5(A), 5(B), 5(D)(a), and 6*

Respondent correctly asserts that Claims 5(A), 5(B), 5(D)(a), and 6, which Simpson raised in a memorandum filed in his state habeas proceedings over six months after he filed the state habeas petition, see supra at 5, are barred from federal review because the circuit court dismissed these claims as time–barred pursuant to Virginia Code § 8.01–654(A)(2). [Dkt. No. 23–3] at 6. The state court's finding that Claims 5(A), 5(B), 5(D)(a), and 6 were barred by the state statute of limitations bars them from federal habeas review. See Sparrow, 439 F. Supp. 2d at 588.

*D. Claims 5(C) and 5(D)(b)*

Respondent correctly argues that Claims 5(C) and 5(D)(b), which respectively allege prosecutorial misconduct based on a failure to authenticate "electronic communication" and calling Javelle Rowe to testify falsely about his relationships, [Dkt. No. 1] at 12; [Dkt. No. 1–2] at 2; [Dkt. No. 19] at 31, were first raised in Simpson's federal petition. Consequently, neither claim has been exhausted and both are simultaneously defaulted because Simpson would be procedurally barred from raising them now in a state habeas petition. If Simpson attempted to raise either claim in a second state habeas petition, the claims would be barred as successive under Virginia Code § 8.01–654(B)(2),[13] or time barred under the state habeas statute of limitations, Virginia Code § 8.01–654(A)(2).

---

have held, Virginia Code § 8.01-654(A)(2) constitutes an adequate and independent state-law procedural rule, as it is a statutory rule that is not tied to the federal Constitution.") (citation omitted). The Fourth Circuit has "previously [] held that this precise Virginia procedural default rule [Slayton v. Parrigan] constitutes an independent and adequate state ground for a denial of a state habeas petition." Prieto v. Zook, 791 F.3d 465, 468 (4ht Cir. 2015) (citing Mu'Min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997)).

[13] See Mackall, 131 F.3d at 445-46 (Code § 8.01-654(B)(2) is an adequate and independent bar).

*E. Cause and Prejudice*

A federal court may review a defaulted claim if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law" or a fundamental miscarriage of justice. See Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2005). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." Coleman v. Thompson, 501 U.S. 722, 753 (1991) (citation omitted). To establish cause, a petitioner must "show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman, 501 U.S. at 753-54; Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990).

To show "prejudice," a petitioner must show that an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). A court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995). Simpson has not demonstrated either cause or prejudice for his failure to comply with the state's procedural rules.

Simpson argues that Claims 5 and 6 are not barred from federal review because he did not become aware of the information supporting Claims 5 and 6 until November 2021, when he received a response to his Freedom of Information Act ("FOIA") request. [Dkt. No. 1] at 12; [Dkt. No. 19] at 27–28]. The record contradicts that argument. In fact, the record shows that Simpson attempted to raise Claims 5(A), 5(B), 5(D)(a), and 6 in an April 23, 2020 filing in the

13

circuit court, (Hab. at 50, 703), over a year before the November 2021 FOIA response. That

filing establishes that Simpson knew of Claims 5(A), 5(B), and 5(D)(a) no later than April 23,

2020, [Dkt. No. 19] at 27, and he clearly knew about Claim 6, which alleges prosecutorial

misconduct based upon the prosecutor's closing argument, because that occurred during trial and

consequently does not involve new information that was unavailable until November 21, 2021.[14]

     In Claim 5(C), Simpson alleges prosecutorial misconduct because the prosecutor failed to

introduce the alleged forensic testimony of Detective Rickens, who is the only person identified

in Claim 5. Simpson argues the claim is not barred because it is based upon "new evidence;"[15]

however, Simpson has known about the alleged testimony of Detective Rickens since before

trial, or at the latest during trial. [Dkt. No. 23-6] at 183–204. Simpson claims that a FOIA

response, which did not include Detective Rickens' alleged forensic testimony, establishes that

Rickens' forensic analysis does not exist and that the prosecutor lied at trial when she

represented that Rickens had examined the laptop on which the text messages had been stored.

He also claims that the prosecutor misrepresented that the text messages had not been tampered

---

[14] Simpson attached a copy of the FOIA responses to a pleading he filed in the Supreme Court of Virginia during his appeal from the dismissal of his habeas petition. (VSCT at 120–33). The FOIA response is thirteen pages: one page is a cover letter, and the majority of the remaining pages are the demographic and personal data contained in police reports (dated April 23, 2015) that have no relevance to his claims. The narrative portions of the reports, prepared by Deputy Vasquez and First Sergeant Woodward, are approximately three pages in length. (Id. at 126–27, 132–33). Woodward referenced his report during his testimony at trial, and referenced Deputy Vasquez's report as well, which contained additional information about Rowe, Erica's boyfriend. (Id. at 132). The reports are not relevant to the claims of prosecutorial misconduct contained in Claims 5(A), 5(B), and 5(D)(a). Woodward's report corroborates Erica's identification of Simpson as the perpetrator, and shows that when Woodward asked her if she was sure the voice she heard was Simpson's, "she said 100%." (Id. at 132). Similarly, Vasquez's report states that while Erica "did not see the male" attacker, "she recognized Thomas'[Petitioner's] voice" when he spoke." (Id. at 126).

[15] Simpson references his Memorandum of Facts in Support to Petition for Writ of Habeas Corpus at pages 31–36 and ¶ 53. [Dkt. No. 27] at 9. The pleading, however, ends with the certificate of service at page 31, and ¶ 53 is merely a summary of the report. [Dkt. No. 19] at 10.

with and that the text messages were stored on the laptop on the dates Erica testified she had

stored them. During the course of the prolonged discussion regarding the admissibility of various

text messages (Comm. Ex. Nos. 5–9), the trial judge ruled that Rickens' testimony was not

needed to establish admissibility,[16] and consequently found that there was no need to call

Rickens. Claim 5(C) is not premised on new evidence and Simpson has failed to establish cause

to excuse his default.[17]

In Claim 5(D)(b), Simpson alleges misconduct by the prosecutor when she allowed Rowe

to testify that he got along with everyone in his life and objected to defense counsel asking Rowe

if he had ever been convicted of a misdemeanor assault and battery offense. The objection was

sustained. Id. at 247–50.[18]

---

[16] The trial court ruled that the proffer of Rickens' testimony went to weight not admissibility, [Dkt. No. 23-6] at 183–84 (referencing Comm. Ex. No. 5), and also overruled defense counsel's objection to admission of the texts without Rickens' testimony. Id. at 185. The trial judge made similar rulings on the texts contained in Commonwealth's Exhibits Nos. 6 and 9. Id. at 195, 201. The trial judge relied upon Erica's testimony for his rulings on foundation, which included the fact that Petitioner did not have a cell phone, that he had sent her the messages using an app on an iPod, and that she had saved them on her laptop. Id. 191, 197, 201–02, 204. The trial judge also excluded the texts in Commonwealth's Exhibits Nos. 7 and 8, ruling that the prejudice outweighed the probative value and the texts were too vague to be relevant to intent. Id. at 194.

[17] Claim 5(C) also has no merit because if there was no need to call Rickens, the prosecutor's failure to introduce his testimony and any statement the prosecutor made regarding testimony that was unnecessary and never heard by the jury, is neither material nor could it have affected the outcome of the trial. See Brown v. French, 147 F.3d 307, 312, 313 (4th Cir. 1998) (dismissing exculpatory evidence claim because it was "not reasonably probable" that had the evidence, which was 'unethically and improperly withheld . . . from the defense [by the prosecutor]. . . . been introduced at trial, it would have resulted in a different verdict" because the evidence was not material); Paradise v. CCI Warden, 136 F.3d 331, 338 (2d Cir. 1998) (while a prosecutor is required to correct misrepresentations, a new trial is not necessary unless there is "a reasonable likelihood" the misrepresentation "affected the judgment of the jury").

[18] In Virginia, "evidence of conviction of a misdemeanor not involving moral turpitude is . . . inadmissible" to impeach a witness. Johnson v. Commonwealth, 345 S.E.2d 303, 308 (Va. Ct. App. 1986); see, e.g., Burford v. Commonwealth, 20 S.E.2d 509, 514 (Va. 1942) ("Assault and battery is not a crime involving moral turpitude and hence a conviction therefor is not relevant for purposes of impeachment.").

To prove constitutional error by a prosecutor, Petitioner must show (1) "that the prosecutor's remarks or conduct were improper" and (2) "that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial." United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002). Simpson claims that the prosecutor elicited Rowe's allegedly false testimony, which implies that the prosecutor failed to correct Rowe's testimony. A prosecutor may violate a defendant's rights if: (1) the statements in question are shown to be actually false; (2) the prosecution knew that they were false; and (3) the statements were material. Tucker v. Johnson, 242 F.3d 617, 625–26 (5th Cir. 2001).

Simpson has not established any of these facts. Instead, he argues that the information in one of the police reports could have been used to show that Rowe did not get along with everyone, in particular, Holly Ferguson, who he describes as Rowe's "baby momma." Simpson alleges that Ferguson had told him that Rowe was seeing Erica and that Rowe "was upset with Holly for saying that and [Holly] said that [Simpson] should know that." (VSCT at 133). He further alleges that Ferguson told Rowe that "she could not care if [Simpson] killed" Rowe and Erica. (Id.). Simpson argues that his trial counsel was attempting to show that other people wanted to harm Rowe and Erica. [Dkt. No. 27] at 10–11.

The alleged statement by Ferguson does not establish that Rowe did not get along well with the people in his life, or that someone else such as Ferguson wanted to harm Rowe or

Erica.[19] The statement is, at best, a prior inconsistent statement that would be admissible only as to Rowe's credibility and not for the truth of the alleged statement by Ferguson.[20]

At trial, the core issue was who had broken into Erica's house. The evidence established that Simpson was in Erica's neighborhood near the time of the break–in based upon his cousin's testimony. In his statements to his cousin, Simpson admitted that he had driven his mother's car to Erica's neighborhood and Sgt. Woodard testified that the car had a warm hood when he found it about 2:30 a.m. Moreover, Erica's testimony that she recognized the intruder's voice as Simpson's voice and Simpson's son being heard in the background of the 911 call tape saying "daddy," was compelling evidence showing that Simpson has not established the necessary prejudiced to excuse his default.

For the same reasons, his assertion of prosecutorial misconduct has no merit. As the state court record establishes, the prosecutor's alleged misconduct did not prejudicially affect Simpson's right to a fair trial. Moreover, although the statement might have been a prior

---

[19] Simpson has also failed to include an affidavit from Ferguson to establish his claim. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (petitioner must proffer the identification of potential witnesses and their specific testimony that allegedly would have been favorable); see also Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced.").

[20] Simpson has not demonstrated that Rowe perjured himself. See Washington v. United States, 291 F. Supp. 2d 418, 438 (W.D. Va. 2002) (explaining difference between prior inconsistent statements and perjury); see also Burr v. Jackson, 19 F.4th 395, 415 (4th Cir. 2021) ("'[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony'") (quoting United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987)); Eason v. Clarke, No. 1:16cv297, 2016 U.S. Dist. LEXIS 140024, at *35 (E.D. Va. Oct. 6, 2016) (observing that prosecution does not suborn perjury because witness made a prior inconsistent statement). As such, Simpson has failed to demonstrate prejudice concerning Claim 5(D)(b).

inconsistent statement, which would have gone to Rowe's credibility, there is no evidence in the record that any other person intended to harm either Erica or Rowe.[21]

    Simpson's cites Martinez v. Ryan, 566 U.S. 1 (2012), in an attempt to salvage Claims 5(A), 5(B), 5(C), 5(D)(a), 5(D)(b), and 6 and to "overcome procedural bar due to ineffective assistance of counsel at his initial post-conviction proceeding." [Dkt. No. 19] at 27. Simpson's argument misconstrues and misapplies Martinez, which recognized a narrow exception for defaulted claims of ineffective assistance of counsel in a state, such as Virginia, where a prisoner is not allowed to raise an ineffective assistance of counsel claim on direct appeal.

> a prisoner may establish cause for a default of an ineffective-assistance [of trial counsel] claim . . . where the state courts did not appoint counsel in the initial-review collateral proceeding . . . [or] where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington.

566 U.S. at 15. In addition to establishing cause, a prisoner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one ... that the claim has some merit." Id.; see also Trevino v. Thaler, 569 U.S. 413, 423 (2013). Martinez is only applicable to ineffective assistance of trial counsel claims, and it is not applicable to prosecutorial misconduct claims. See Abdur'Rahman v. Carpenter, 805 F.3d 710, 714 (6th Cir. 2015) (Martinez does not apply to alleged Brady violations or prosecutorial misconduct "because the [Supreme] Court limited Martinez to claims of ineffective assistance of trial counsel that were procedurally defaulted by lack of or ineffective assistance of post-conviction counsel"); id. at 716 ("Martinez applies only to claims of ineffective assistance of trial counsel, not trial errors")); see, e.g., Hilton v. McCall, C/A No. 1:12-1540-TMC, 2013 U.S. Dist. LEXIS 109331,

---

[21] Rowe did not identify Simpson as the intruder and Rowe's injuries were not in dispute. Again, the only issue was the identity of the intruder. Accordingly, attacking Rowe's credibility would not have materially helped Simpson.

*5-6 (D.S.C. Aug.5, 2013) (holding <u>Martinez</u> not applicable to claims of prosecutorial misconduct), <u>appeal dismissed</u>, 552 F. App'x 283 (4th Cir. 2014); <u>see also</u> <u>Hunton v. Sinclair</u>, 732 F.3d 1124, 1126-27 (9th Cir. 2013) (refusing to extend <u>Martinez</u> to a <u>Brady</u> claim defaulted by state post-conviction counsel); <u>cf.</u> <u>Davila v. Davis</u>, 137 S. Ct. 2058, 2067 (2017) ("declining to expand the <u>Martinez</u> exception to . . . ineffective assistance of appellate counsel").

Respondent concedes that the remainder of Simpson's claims are properly exhausted because he raised them on direct appeal or in his state habeas petition. [Dkt. No. 23] at 8.

### IV. Standard of Review

To obtain federal habeas relief, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "State court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." <u>Gray v. Branker</u>, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

An unreasonable application of federal law is not the same as an incorrect application of federal law. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." <u>Schriro v.</u>

Landrigan, 550 U.S. 465, 473 (2007); accord Renico v. Lett, 559 U.S. 766, 772-73 (2010).

"[E]ven 'clear error' will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (citing

Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). This "highly deferential standard . . . demands

that state court decisions be given the benefit of the doubt." Renico, 559 U.S. at 773 (2010)

(citations omitted). "The required deference encompasses both the state court's legal conclusions

and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006). "A state court's

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter,

562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652 (2004)). This highly

deferential standard is "difficult to meet," and governs this Court's review of all legal

determinations made on the merits by state habeas courts. Id. at 102. Section 2254(d)(1) also

"requires an examination of the state-court decision at the time it was made. It follows that the

record under review is limited to the record in existence at that same time—i.e., the record before

the state court." Cullen v. Pinholster, 563 U.S. 170, 182 (2011).

　　　For claims of ineffective assistance of counsel, a petitioner must meet the highly

demanding standard set forth for such claims in Strickland v. Washington, 466 U.S. 668 (1984).

Under Strickland, a petitioner has the burden to show that his attorney's performance was

deficient and that he was prejudiced as a result. See id. at 687. In determining whether counsel's

performance was deficient, "[j]udicial scrutiny of counsel's performance must be highly

deferential." Id. at 689. Accordingly, "a [habeas] court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." Id.

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; see

also <u>Burket v. Angelone</u>, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis").

The first prong of the <u>Strickland</u> test, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. The second prong of the <u>Strickland</u> test, the "prejudice" inquiry, requires showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694 (emphasis added). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." <u>Id.</u> An ineffective counsel claim may be disposed of on either prong because deficient performance and prejudice are "separate and distinct elements." <u>Spencer v. Murray</u>, 18 F.3d 229, 233 (4th Cir. 1994).

Finally, when evaluating claims of ineffective assistance of counsel, federal habeas relief may be granted only if the state–court decision unreasonably applied <u>Strickland</u>. "Under the doubly deferential judicial review that applies to a <u>Strickland</u> claim . . . [t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" <u>Id.</u> at 123 (quoting <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007)). "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Id.</u>

*A. Claim 1*

Simpson alleges that the state circuit court "fail[ed] to remain a n[e]utral party" because it dismissed his state habeas petition with a final order drafted by respondent's counsel. [Dkt. No. 1] at 5; [Dkt. No. 19] at 17–18. Simpson selectively quotes from precedent to argue that the circuit court's adoption of the respondent's counsel's draft order constituted an error that "qualifies as 'a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" [Dkt. No. 27] at 3 (quoting Pethtel, 617 F.3d at 303 (quoting Reed v. Farley, 512 U.S. 339, 348 (1994) (citation omitted)). Simpson's argument omits the requirement set forth in Pethtel that the error be one of federal law. When taken in context, Pethtel not only fails to support his claim but instead establishes his claim has no merit.

> It is a fundamental principle of habeas review that not "every asserted error of law can be raised on a [§ 2254] motion." Davis v. United States, 417 U.S. 333, 346 (1974). Instead, "habeas review is available to check violations of federal laws when the error qualifies as 'a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'"

Pethtel, 617 F.3d at 303 (alteration in original).

Simpson's claim does not allege conduct that violates "'the Constitution or laws or treaties of the United States,'" Lawrence v. Branker, 517 F.3d 700, 717 (4th Cir. 2008) (quoting 28 U.S.C. § 2254(a)), because there is "no federal constitutional right to post-conviction proceedings in state court," Id. (citing Lackawanna County Dist. Att'y v. Coss, 532 U.S. 394, 402 (2001)), and any "error in state post-conviction proceedings" does not entitle a petitioner "to federal habeas relief because an "error relating to . . . [his] post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself." Lawrence, 517 F.3d at 717 (citing Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988)).

22

Accordingly, "even where there is some error in state post–conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post–conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself." Id. [22] For these reasons, Claim 1 will be dismissed.

   *B. Remaining Portion of Claim 2*

   In the exhausted portion of Claim 2, Simpson contends that the state court determination that his son's statement, "daddy," on the 911 call recording was harmless hearsay was an unreasonable determination of the facts. [Dkt. No. 1] at 7; [Dkt. No. 19] at 23–24. This claim only alleges a violation of state law. The Court of Appeals of Virginia found that the admission of Simpson's son's statement was harmless error, under the non-constitutional standard, because the admission of the statement "was merely cumulative of [Erica]'s independent testimony on the same point," which rendered the admission of "the recorded statement into evidence . . . harmless." Simpson, 2017 Va. App. LEXIS 292, at *13.[23] Because the admission of evidence is governed by state law, it is not a basis for habeas relief. Estelle v. McGuire, 502 U.S.

---

[22] Although the Fourth Circuit has criticized entering draft orders, § 2254(d)(1) deference applies "to all claims 'adjudicated on the merits,' that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999) (quoting Cardwell v. Greene, 152 F.3d 331, 339 (4th Cir. 1998)). The deference applies where a state court adopts an order drafted and presented with notice, not *ex parte,* by respondent's counsel. Burr v. Jackson, 19 F.4th 395, 406–07 (4th Cir. 2021) (discussing and applying Anderson v. City of Bessemer City, 470 U.S. 564, 572–73 (1985)) (citing cases). See also Rhode v. Hall, 582 F.3d 1273, 1281 n.4 (11th Cir. 2009) (a state court's verbatim adoption of the prosecution's proposed order does not give rise to a constitutional violation) (per curiam); Green v. Thaler, 699 F.3d 404, 415 (5th Cir. 2012) (applying Anderson in a capital habeas case even though "the state court requested [the proposed order] *ex parte*, and signed [it] verbatim," where "the state court had already rendered a judgment from the bench" and the petitioner "apparently had an opportunity to object to the findings in a motion to strike he filed in the state court").

[23] The Supreme Court of Virginia's summary refusal order requires that this Court "look through" that summary order to the last reasoned state decision, which is that of the Court of Appeals of Virginia. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

62, 67 (1991); see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Further, the other evidence strongly pointed to Simpson as the intruder. He was in the area near the time of the break-in (roughly 1:30 a.m. on April 23, 2015) and admitted to his cousin at roughly 2:00 a.m. that he had driven his mother's car to the area. See United States v. McClaren, 13 F.4th 386, 416 (5th Cir. 2021) (where "[t]he potentially problematic sections of the factual basis were all proven by other testimony, and therefore there is no reasonable probability that the jury would have reached a different conclusion had those sections been redacted," the alleged Confrontation Clause violation was harmless).[24] For these reasons, this portion of Claim 2 will be dismissed.

   C. Claim 3

   In Claim 3, Simpson contends that the state appellate court's holding that the Commonwealth had laid an adequate foundation for the admission of the screenshots was an unreasonable determination of the facts. [Dkt. No. 1] at 8; [Dkt. No. 19] at 23–26. Simpson argues that the screenshots were unreliable because there was no forensic analysis to establish their authenticity. [Dkt. No. 1] at 8. The last reasoned decision concerning admission of the text screenshots was issued by the Court of Appeals of Virginia, which rejected Simpson's argument that the screenshots were admitted without a proper foundation. Instead, that court found that

---

[24] See, e.g., Woods v. Sinclair, 764 F.3d 1109, 1125–26 (9th Cir. 2014) (Confrontation Clause violation harmless because contested evidence was cumulative of other testimony in all material aspects); United States v. Travis, 311 F. App'x 305, 307 (11th Cir. 2009) ("the Confrontation Clause error was harmless because the evidence was cumulative and corroborated by witnesses subject to cross-examination and the physical evidence of defendant's guilt was massive").

Erica's testimony satisfied the preponderance of the evidence standard, and found that Simpson's

argument went to the weight to be afforded to the evidence and not its admissibility.

> Here, [Erica] testified that she received the screenshots, and she testified about the
> means she used to save and preserve them. She also testified about the extensive
> personal details contained in the text messages, which convinced her that appellant
> was their author. Appellant offered no evidence at the motion hearing or at trial that
> [Erica] had in any way fabricated or manipulated the screenshots or the underlying
> text messages. The trial court found the Commonwealth's evidence persuasive, and
> concluded it had met its burden of proving the authenticity of three sets of
> screenshots by a preponderance of the evidence. The court properly admitted those
> screenshots, and properly left questions of their evidentiary weight to the jury.
> Appellant's arguments on appeal fail to demonstrate an abuse of discretion by the
> trial court in finding there was an adequate foundation for admission of the
> screenshots.
>
> ****
>
> Here, the trial court exercised its discretion by carefully weighing the probative
> value of each set of text messages and balancing that probative value against any
> potentially prejudicial effects. The court excluded the oldest screenshots,
> concluding that the messages they contained were too remote in time to be relevant.
> Others were found to be too inflammatory based on the extreme nature of the threats
> they contained. The court admitted only those screenshots which contained
> "specific threats and specific dates" tied to [Erica], "specific threats" based upon
> the couple's "legal activity . . . going on at the time," and further specific threats
> directed at [Erica]. The text messages contained in the admitted screenshots were
> relevant to proving the intent, malice, motive, and identity of the intruder, all of
> which were at issue in the instant case. While appellant correctly points out that
> some of the messages contained in the screenshots were prejudicial, nothing in the
> record demonstrates that any prejudice outweighed their probative value. After
> considering appellant's arguments regarding [Erica]'s screenshots, we conclude
> that the trial court carefully evaluated the admissibility of each set of screenshots
> and did not abuse its discretion in admitting them into evidence.

Simpson, 2017 Va. App. LEXIS 292, at *13–18 (internal footnote omitted).

It is evident that the claim raised on direct appeal concerned the application of state and

not federal law. "[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions. In conducting habeas review, a federal court is limited to

deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

Estelle, 502 U.S. at 67-68. To the extent this claim involves federal law, the Court of Appeals'

ruling was not contrary to or an unreasonable application of federal law.[25] Nor was it an unreasonable application of the facts, therefore, Claim 3 will be dismissed.

### D. Claim 4(A)

In Claim 4(A), Simpson contends that he received ineffective assistance of counsel when his attorney failed to object to the admission of the screenshots because the prosecutor did not have Detective Rickens testify. [Dkt. No. 1] at 10; [Dkt. No. 1–1] at 1; [Dkt. No. 19] at 19–20. It is unclear what act or omission Simpson is alleging constituted ineffective assistance because Simpson admits that his counsel filed a pretrial motion in limine which argued that the screenshots of the text messages should be excluded. [Dkt. No. 1] at 10.

In dismissing this claim in the state habeas proceedings, the circuit court stated:

> . . . Simpson contends that his counsel was ineffective for failing to object to the admission of the screenshots of the text messages. Simpson claims that the trial court permitted the prosecutor multiple attempts to admit the text messages, and the prosecutor failed to call a Detective Rickens as a witness who would have testified as to a forensic analysis of the computer from which a screenshot of the text messages was taken. Simpson contends that his counsel should have objected to the failure to call Detective Rickens. Simpson's claim fails for the simple reason that his counsel did, in fact, object to the admission of the text messages and additionally directed the court's attention to the lack of testimony from Detective Rickens.

---

[25] Under Virginia law, to authenticate evidence the proponent must establish "an evidentiary basis sufficient for the trier of fact to conclude that the [evidence] came from the source claimed[.]" Walters v. Littleton, 290 S.E.2d 839, 842 (Va. 1982). At trial, Erica testified that when she received text messages from Simpson, she saved them as screenshots on her computer. [Dkt. No. 23-6] at 169–82. The circuit court concluded that her testimony provided a sufficient evidentiary basis to conclude that the screenshots of the text messages were what the Commonwealth purported them to be. Id. at 185. See Garnett v. Commonwealth, No. 1573–15–2, 2016 Va. App. LEXIS 361, at *6–7 (Va. Ct. App. Dec. 20, 2016) (citing cases and observing there are "multiple ways to authenticate electronic communications"); cf. United States v. Vidacak, 553 F.3d 344, 349 (4th Cir. ) (explaining that under the Federal Rules of Evidence, "[t]he burden to authenticate . . . is not high—only a prima facie showing is required"); see also United States v. Jones, No. 5:14-cr-119, 2018 U.S. Dist. LEXIS 178459, *15 (E.D. Ky. Oct. 17, 2018) (explaining that because of the indirect nature of text messages, they are often authenticated based upon "context cues and distinctive features of text messages to determine who sent the message, such as writing style, spelling, use of slang or common phrases, saved phone contacts, and history of communication").

Moreover, Simpson argued this issue on appeal. See Simpson, 2017 Va. App. LEXIS [292] at *13–18. Accordingly, Simpson's counsel objected to the admission of the text messages, and Simpson's allegations have no basis in fact. He, therefore, cannot demonstrate either deficient performance or prejudice. Simpson may believe that counsel was ineffective because the court ruled against him, but that is not the standard for constitutionally effective representation. See Schmitt v. Kelly, No. 05–22, 189 F. App'x 257, 276 (4th Cir. 2006) ("In hindsight, almost every lawyer, whether he has won or lost, recognizes that he could have improved upon some part of his performance at trial, but that honest recognition does not necessarily mean that his performance was constitutionally ineffective."); see also Franza v. Stinson, 58 F. Supp. 2d 124, 135 (S.D.N.Y. 1999) ("Even a Clarence Darrow or Arthur Liman lost cases. In every case, no matter how good the lawyers, one side prevails and one side loses, but that is no evidence that the losing lawyer was ineffective.").

[Dkt. No. 23-3] at 7–8 (internal footnote omitted).[26]

The circuit court's ruling was neither contrary to, nor an unreasonable application of, federal law, and was not an unreasonable application of the facts. Accordingly, Claim 4(A) will be dismissed.[27]

*E. Claim 4(B)*

In Claim 4(B), Simpson alleges his attorney was ineffective due to a conflict of interest. [Dkt. No. 1] at 10; [Dkt. No. 1–1] at 1; [Dkt. No. 19] at 20–21. He describes that conflict as consisting of his attorney's admission during closing argument that Simpson authored the text messages. [Dkt. No. 1–1] at 1; [Dkt. No. 19] at 20–21. In the state habeas proceedings, the circuit court dismissed this claim, finding counsel's argument was a reasonable tactical decision.

---

[26] The last reasoned opinion on this issue was in the circuit court. The Supreme Court of Virginia issued a summary refusal and therefore, the determination of the claim by the circuit court is imputed to the Supreme Court of Virginia. Ylst, 501 U.S. at 803.

[27] Counsel's objections were partially successful in that the circuit court excluded some of the text messages as being "too remote" in time or as too prejudicial. See Simpson, 2017 Va. App. LEXIS 292, at *17. To the extent that Simpson alleges his counsel was ineffective for failing to "follow" the issue and relitigate it, such a motion would have been futile. [Dkt. No.1] at 10. The circuit court's ruling was not conditional, and continued argument on these issues would have been meaningless. Counsel is not required to file futile motions. See Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (noting that counsel is not required to make futile arguments).

27

. . . Simpson contends that his counsel had a conflict of interest that prejudiced his defense. Simpson claims that he and his counsel agreed to dispute authorship of the text messages and would proceed based on a strategy of pointing out inconsistencies in the Commonwealth's case and questioning the bias of the investigation. Simpson argues that during closing arguments, his counsel admitted that he was the author of the text messages, and this constitutes a conflict of interest.

This is, however, not a conflict of interest. See Spence v. Commonwealth, 60 Va. App. 355, 370, 727 S.E.2d 786, 793 (2012) (noting that a conflict of interest is "a conflict that affected counsel's performance–as opposed to a mere theoretical division of loyalties" (internal emphasis and quotation marks omitted)). See also Juniper v. Warden of the Sussex I State Prison, 281 Va. 277, 301, 707 S.E.2d 290, 310 (2011) ("The Sixth Amendment does not guarantee a meaningful relationship between an accused and his counsel." (internal quotation marks omitted)). Simpson has identified a tactical disagreement, which is insufficient to demonstrate prejudice or a conflict of interest. See United States v. Jones, 455 F.3d 134, 150 (2d Cir. 2006) ("As the only basis asserted by Jones for his claim that his attorneys had a conflict of interest is that he and they disagreed as to tactics, he has not shown an actual conflict of interest.").

Simpson alleges that counsel identified him as the author of the text messages in closing argument. One isolated statement in closing argument does not create a conflict of interest. Simpson has not identified how counsel's loyalties were divided such that counsel's performance was affected. Moreover, such tactical decisions are better left to trial counsel and should not be second-guessed by a habeas court. See Prieto v. Warden of the Sussex I State Prison, 286 Va. 99, 108, 748 S.E.2d 94, 104 (2013). See also Yarborough v. Gentry, 540 U.S. 1, 6 (2003) (noting high deference to properness of trial counsel's arguments in summation). Counsel could have reasonably determined that continuing to deny authorship of the text messages in the face of the admitted evidence was a poor tactic to take with the jury and, instead, chose to question the police investigation. Such a determination does not constitute a conflict of interest such that it prejudiced Simpson's defense.

[Dkt. No. 23-3] at 9–10.

The circuit court's ruling was not contrary to, or an unreasonable application of, federal

law,[28] and was not an unreasonable application of the facts. Accordingly, Claim 4(B) will be

dismissed.

---

[28] Simpson has failed to demonstrate an actual conflict of interest that affected counsel's performance. See United States v. Purpera, 844 F. App'x 614, 620–21 (4th Cir. 2021) (discussing three part test adopted in Mickens v. Taylor, 240 F.3d 348, 361 (4th Cir. 2001) (en banc) ("First, the [defendant] must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued. Second, the [defendant] must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at

*F. Claims 4(C) and 4(D)*

In Claims 4(C) and 4(D), Simpson respectively argues that his counsel was ineffective for failing to object to the admission of the son's statement in the 911 call as hearsay and as a statement of identification. [Dkt. No. 1] at 10; [Dkt. No. 1–1] at 1; [Dkt. No. 19] at 21–23. The circuit court found each claim had no merit under either prong of Strickland, noting that trial counsel had in fact filed a motion in limine objecting to the admission of the 911 call. [Dkt. No. 1] at 10.

> In Claims (A)(2) and (3), Simpson claims that his counsel was ineffective for failing to object to the son's statement in the recording of the 911 call as hearsay and as identification. Simpson's argument appears to be that his counsel permitted Erica to testify about the 911 call and to identify the child's voice in the recording.
>
> Again, Simpson's claims fail for the reason that his counsel did object to the admission of the 911 recording and specifically argued that the son's statement on the recording was hearsay and that the statement cannot be used for identification. Furthermore, Simpson argued these issues on appeal. See Simpson, 2017 Va. App. LEXIS [292,] at *10–13. Simpson's allegations, therefore, have no basis in fact because his counsel objected to the admission of the 911 recording on the grounds that Simpson wished litigated. Accordingly, he cannot demonstrate either deficient performance or prejudice because his counsel presented these arguments, and both the trial and appellate courts ruled on them.

[Dkt. No. 23-3] at 8–9.

The circuit court's ruling was not contrary to, or an unreasonable application of, federal law and was not an unreasonable application of the facts. Accordingly, Claims 4(C) and (D) will be dismissed.

---

the time of the attorney's tactical decision. . . . Finally, the [defendant] must establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict."). Simpson's claim fails under Mickens because trial counsel's argument was reasonable under the circumstances. See also United States v. Oliver, 406 F. App'x 808, 811 (4th Cir. 2011) (defining "actual conflict of interest" as anything showing that client's interests "diverged [from his attorney's] with respect to a material factual or legal issue or to a course of action.").

## V. Conclusion

For the reasons discussed above, respondent's Motions to Dismiss [Dkt. No. 21, 30] will be granted, and this petition will be dismissed with prejudice by an order to be issued with this Memorandum Opinion.

Entered this 24th day of August 2023.

Alexandria, Virginia

_____ /s/
Leonie M. Brinkema
United States District Judge